STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of John and          }
Sharon O' Rear, et al.             }
                                   }   Docket No. 2-1-00 Vtec
                                   }
                                   }

Decision and Order on Motion to Remand

Appellants appealed from the December 7, 1999 decision of the Zoning Board of Adjustment (ZBA) of the Town of Calais regarding the application of Stanley and Janice Morse and Black Rock Coal, Inc. for a conditional use permit. A number of other individuals and the Selectboard of the Town of Calais entered their appearance as interested parties but have not been active participants. Appellants are represented by Gerald R. Tarrant, Esq.; Appellee-Applicant Black Rock Coal, Inc. is represented by George E. Rice, Esq. When the term Appellee-Applicant is used in the singular in this decision, it refers to Appellee-Applicant Black Rock Coal, Inc.

Appellee-Applicant applied for conditional use approval to extract wall stone and to crush stone[1] on ten acres of a 45-acre parcel of property to be purchased from Stanley and Janice Morse. The property is located in the Rural Residential zoning district, and lies behind and to the east of the lots fronting on the County Road. The access road from the working site of the project was proposed to extend to the County Road over a right-of-way over the land of Sandra Guerrette. Appellee-Applicant had initially proposed that the access to the County Road be made through an existing curb cut located on the land of Sandra Guerette (" the Guerette driveway" ) but during the proceedings proposed instead to establish a new curb cut somewhat southerly of the existing one, still on the Guerette property. Appellee-Applicant had obtained an access permit for the new curb cut from the Town Clerk.

Because the access permit had not been issued by the selectboard as required by Section II(11) of the Calais Zoning Ordinance and by 19 V.S.A. § 1111, the Court ruled that therefore the application was not complete. A portion of the scheduled hearing on the merits was postponed to allow Appellee-Applicant to apply to the Selectboard for the access permit. On April 9, 2001, the Selectboard denied the new curb cut on the Guerette property.

At a conference held on April 13, 2001, Appellee-Applicant proposed to proceed with the application over the Guerette driveway as originally proposed. Appellants raised the objection that no access permit had been obtained from the Selectboard for that access. Appellants filed a motion to remand the application to the Selectboard for an access permit, and to the ZBA for its consideration of the different access point on the Guerette property. At the oral argument on that motion held on April 18, 2001, Appellee-Applicant argued that 19 V.S.A. § 1111(b) does not require an access permit unless either the grade of the highway right-of-way would be affected,

or the flow of water onto or from the highway right-of-way would be affected. Appellee-Applicant also now proposes two alternative access roads from the project property to the County Road: one over the Guerette driveway as originally proposed, and one over the driveway of the next property to the south, owned by Mr. and Mrs. Edward Simmons (" the Simmons driveway" ). The Court required Appellee-Applicant to provide plans of the proposed alternative access points at the Guerette and Simmons driveways, to assist it in determining whether any of the factors of § 1111(b) would be implicated by the proposed access roads. The plans were provided and the parties presented oral argument on the record on April 23, 2001.

First, Appellants argue that Appellee-Applicant may not propose two alternative locations for the access drive from the project site to the County Road. But there is no reason why an applicant may not make alternative proposals. An applicant may make alternative proposals in separate applications; the ZBA decision on each could be appealed to this Court, and the appeals could be consolidated on appeal. It is equally if not more efficient for such alternative proposals to come before the Court in a single appeal, so long as the ZBA has had each alternative before it for consideration.

Second, Appellants argue that the easement grantors for these access drives are required to be co-applicants for the permit. However, it is sufficient under the zoning laws that Appellee-Applicant holds the easement interest to the access drives, just as the buyer of a property under contract may hold a sufficient interest to be the sole applicant. It may be necessary, however, for Appellee-Applicant to show the extent or scope of the access easement, by presenting into evidence the deed for the access easement.

Third, Appellants argue that neither driveway was before the ZBA for its consideration in analyzing the conditional use standards for the proposed project. From the documents already in evidence, particularly Exhibit 6 and Exhibit 8, it appears that the Guerrette driveway was the access originally proposed to and considered by the ZBA, and therefore it is before the Court and no remand to the ZBA is necessary for that proposal. However, unless the ZBA had before it the possibility of an access drive over the Simmons property, this Court should not address the location of the Simmons driveway in the first instance. In re Maple Tree Place, 156 Vt. 494, 500 (1991). The Simmons driveway proposal must be remanded to the ZBA to consider at least the effect of that access location on conditional use standard 3: traffic on roads and highways in the vicinity.

Appellants argue that the access onto the County Road for the access road at both the Guerette driveway and the Simmons driveway requires a permit from the Selectboard under 19 V.S.A. § 1111(b) and § II(11) of the Zoning Regulations, and that the Selectboard access permit must be obtained before the conditional use application can proceed any further in this Court. If an access permit is required, then Appellants are correct that it is a procedural prerequisite to the completeness of the zoning application. § II(11). Appellee-Applicant argues that no permit is required for an existing driveway, and that in any event the proposed access drives do not require a permit under § 1111(b).

It is important to begin by recognizing the overall purpose of 19 V.S.A. § 1111, which governs " permitted use of the [highway] right-of-way." It is located in Chapter 11 of Title 19, devoted to

the " Protection of Highways." The statute provides three permitted types of uses of the highway right-of-way: installing pipes and wires in the highway (§ 1111(c)); using the highway right-of-way for private sewer or water lines (§ 1111(d)); and using the highway right-of-way for driveway entrances, work affecting the highway grades or drainage (§ 1111(b)). The purposes of § 1111(b) may be found in the scope of the rules authorized to be adopted to carry out its provisions: to " adequately protect and promote the safety of the traveling public, maintain reasonable levels of service on the existing highway system, and protect the public investment in the existing highway infrastructure."

Section 1111(b) requires a permit to be obtained from the Selectboard, in the case of town highways such as the County Road, for the following:

to develop, construct, regrade or resurface any driveway, entrance, or approach, or build a fence or building, or deposit material of any kind within, or to in any way affect the grade of a highway right-of-way, or obstruct a ditch, culvert or drainage course that drains a highway, or fill or grade the land adjacent to a highway so as to divert the flow of water onto the highway right-of-way

Unfortunately, the section is devoid of internal numbering, or secondary punctuation (such as semicolons) to assist the Court or the parties in parsing out the legislative meaning. In that effort, we are advised to base the interpretation of the statute on the statute as a whole, not to " indulge in quibbles over minute points of punctuation." Hill v. Conway, 143 Vt. 91, 94 (1983).

Appellee-Applicant suggests that § 1111(b) is not triggered unless one of the listed activities either affects the grade of the highway right-of-way or diverts the flow of water onto the right-of-way. But such a reading ignores the purpose of the statute to regulate the permitted use of the highway right-of-way. Rather, reading the section with that purpose in mind, the section requires a permit for performing the listed activities within the highway right-of-way, or for affecting the grade of the highway right-of-way (by the listed activities or any other activity), or for interfering with the drainage of water from or onto a highway right-of-way (by the listed activities or any other activity). In more modern statutory punctuation, it could have been diagrammed as follows:

(1)(a) to develop, construct, regrade or resurface any driveway, entrance, or approach, or build a fence or building, or deposit material of any kind within, or

(b) to in any way affect the grade of,

a highway right-of-way; or

(2)(a) obstruct a ditch, culvert or drainage course that drains a highway, or

(b) fill or grade the land adjacent to a highway so as to divert the flow of water onto the highway right-of-way

From the plans[2] for the portions of the two access roads as they relate to the highway right-of-way for the County Road, it is apparent that both will be wider than the residential driveways they replace, and that both will add at least gravel and perhaps also some supporting subsurface material to create the 45-foot width as the driveway passes into the highway right-of-way, as well as to create the larger expanse of the throat of the drive within the highway right-of-way. Both have a two-foot-wide paved apron as well where the drive meets the pavement of the County Road. Even if none of this added material will affect the grade of the highway right-of-way, and assuming that none of the work will obstruct any highway drainage or divert the flow of water onto the highway right-of-way, the work does appear to meet the first clause of § 1111(b), diagrammed as subsection 1(a) above. That is, the work will develop, construct, or resurface, if not regrade, a driveway or approach located within the highway right-of-way, and it will in any event deposit material, that is, at least some gravel and the asphalt for the paved apron, within the highway right-of-way. Accordingly, both alternatives require an access permit from the Selectboard, which under § II(11) must be obtained prior to proceeding with the zoning application.

The Court assumes that under the circumstances of this ruling, the hearing scheduled for this Thursday, April 26, 2001, will not be able to proceed. We will hold a conference as agreed this morning, April 24, 2001 at 9:15 a.m. to discuss the next events in this appeal.

Done at Barre, Vermont, this 24th day of April, 2001.

_____

Merideth Wright
Environmental Judge

**Footnotes**

1. In its March 21, 2001 ruling the Court ruled that the wall stone extraction was an allowed use for which conditional use approval could be sought, but that the commercial crushing of stone was not an allowed use in this zoning district.

2. The plans do not show a cross-section of the roadway construction at the intersections with the County Road.